# BALTIMORE CITY COURT

Filed May 7, 1917.

MAYOR AND CITY COUNCIL OF BALTIMORE

VS.

CHAS. W. SIMPSON AND LOUISA SIMPSON, ET AL.

*S. S. Field*, City Solicitor, for plaintiff.

*Edgar Allan Poe* for defendants.

BOND, J.—

The ordinance attacked on the demurrer, with its reference to the earlier ordinance, No. 576, approved February 16, 1915, provides for the condemnation of land for a "Civic Center" as outlined in a partial report of the Municipal Art Society in 1910. It is true the report to which reference is made is not that of a governmental body, and there is no complete statutory definition of the purpose of the city in this respect. I do not see, however, that this renders the ordinance invalid. It clearly adopts a plan for the Civic Center, and provides for the acquisition of land for that purpose; and if it is necessary that the public character of a Civic Center be demonstrated reference to an unofficial report seems to me permissible. The plan which was recommended by the Municipal Art Society, it is true, is adopted only subject to such modifications as the city might hereafter decide upon, but that, too, I regard as without effect on the validity of the ordinance.

The Civic Center described in the report is, it seems to me, to be an open parked space about a group of

public buildings, or about which public buildings may be grouped hereafter. The only specific legislative authority for such an improvement is that in the Act of 1908, Chapter 188. There a municipal loan to cover the cost of a "Civic Center" is provided for. And the act describes it as "a Civic Center, or central square or squares or district." After the provision for the loan there is a direct grant of power for the acquisition of the land which may be needed for this and some other kindred purposes; it provides that "The Mayor and City Council of Baltimore is hereby authorized to delegate to the Board of Park Commissioners of the City of Baltimore * * * the power to acquire * * * by condemnation." There is no other grant of power to acquire the land, in this particular statute at least, and the ordinance must come within the provision quoted to derive its power from that act. But it does not come within that provision, as I read it, for the ordinance delegates the power to the Board of Estimates and not to the Board of Park Commissioners. The power of delegation in the act must be exclusive, or it means nothing. It is significant that the loan for which the act provides has never been authorized by popular vote, and the improvement is certainly not made under so much of the act in any event.

The ordinance cannot be included under the statutory provision for opening streets (Section 828, City Charter) for that statute requires a different method of procedure with advertised notice to owners and other prerequisites not followed here.

If the ordinance is valid it must, apparently, derive its force from the Act of 1908, Chapter 166, now Sub-section 4 of Section 6 of the Charter. Ample authority is there given for acquiring and improving areas about public buildings and for acquiring land for specified buildings, "schoolhouses, engine houses, court houses, markets." It is so specific that it excludes the acquisition of land for any other sort of building. But it is objected that the Civic Center plan adopted by the present ordinance includes the acquisition of the very land now sought to be condemned for the erection of a City Hall Annex, a building not within the authority of the statute, and so because of that fact the ordinance is not authorized.

The Municipal Art Society plan shows a building on this land, but, according to the architect's explanation, only by way of showing possibilities, it having been reported that the City had need of such a building. I see nothing in this, or in the ordinance, which commits the city to erect this detail, or to the erection of any building anywhere. Must an ordinance disclaim an unauthorized feature and definitely confine its provisions to authorized features of a plan in order to render it valid? That question is not entirely free from difficulty, but my conclusion is that such a disclaimer is not essential.

Another objection to the ordinance is that it does not provide the procedure for condemnation which is necessary for an ordinance under the provisions of the Act of 1908, Chapter 166. But I conclude that this requirement of the statute has been superseded by the Act of 1914, Chapter 463, Code, Art. 33A, Sec. 14, in accordance with the provisions of which the city is now proceeding.

Still another objection is that the city is not prepared to proceed with the plan as yet, inasmuch as the land now being acquired is not alone sufficient to carry it out, and the details are not decided upon. It is, indeed, the obvious purpose to acquire land piecemeal. It is suggested in argument that it may be the purpose to acquire in anticipation of a future use, not for a present use. I think such an advance acquisition is, however, not prohibited.

The ordinance has been questioned, too, because it makes no provision for the money to pay for the land to be condemned; and fear has been expressed that after condemnation proceedings there may be long delay waiting for the money to be provided. The answer to this objection seems to me to be that the validity of an ordinance cannot be tested by an examination into the city's power to meet its obligations at once. If there should be danger of hardship from condemnation too far in advance of the appropriation of money, it is, I think, a danger which a court could not attempt to remove.

The remaining objection, that to the delegation of the power to condemn to the Board of Estimates, is more serious. It may appear to be a matter of

no practical importance that the Mayor and City Council by ordinance direct one board rather than another to carry out one of the municipal powers. But when the question is raised a court cannot ignore the fact that the various municipal boards and agencies have clearly defined functions and that these functions cannot be shifted, or a board cannot be used for new and entirely different purposes, without a violation of the Charter. And when in an ordinance the Board of Estimates is directed to condemn property it is directed to act outside its sphere. I can see no other answer than that the ordinance is for this reason invalid, as far as the power of condemnation is concerned; and for this reason the proceedings under it must fail. The demurrers are accordingly sustained.